PETTY, J., with whom ALSTON, J.,
joins, concurring.
Because the issue before us does not involve the constitutional over-breadth or vagueness of this statute, we must once again limit our discussion to whether this particular knife is a dirk, bowie knife or a weapon of like kind. For the reasons set out in the majority opinion, I agree that it is not and I concur in both the reasoning and the conclusion of the majority. I write separately simply to point that, while we analyze this particular knife and thus decide this case, once again we fail to provide real guidance to police, prosecutors or the citizens of this Commonwealth as to exactly what conduct is criminal under Code § 18.2-308(A).
The statutory language we are called upon to define—“dirk, bowie knife ... or weapon of like kind”—has appeared in the Code of Virginia since at least 1849. Title 54, Chapter 7, § 7 Code of Virginia (1849) made it illegal to “habitually, carry about [one’s person] hid from common observation, any pistol, dirk, bowie knife or weapon of like kind.” Apparently, at that time, a mere thirteen years after the death of the designer of one of the knives in question, Colonel James Bowie, Virginians did not have much trouble differentiating this weapon, or weapons like it, from more utilitarian knives such as hunting knives.
By the end of the twentieth century, however, that recognition had apparently faded. In 1998 our Supreme Court was first called upon to determine which bladed weapons fell within the scope of the statute. In Wood v. Henry County *403 Public Schools, 255 Va. 85, 495 S.E.2d 255 (1998), the Court concluded that a pocketknife was “neither a dirk, bowie knife ... nor a weapon of like kind.” Id. at 94, 495 S.E.2d at 260. Since that date, our Supreme Court and this Court have considered the applicability of Code § 18.2-308(A) to various types of knives on no fewer than ten separate occasions, and the only consistency in the conclusions reached has been inconsistency.
In 1998, we held that a kitchen knife was not a weapon of like kind. Ricks v. Commonwealth, 27 Va.App. 442, 499 S.E.2d 575 (1998). Seven years later, we were again called upon to consider the same type of knife, and we reached the same conclusion. Goodunn v. Commonwealth, No.2006-04-1, 2005 WL 1610764 (Va.Ct.App. July 12, 2005) (An eight to ten inch long steak knife with a six inch blade is not weapon of like kind.). That same year, however, we held that a twelve and three-quarter inch kitchen knife with a seven and three-quarter inch blade was a weapon of like kind because of the offensive manner in which it was used. Farrakhan v. Commonwealth, No. 1804-04-4, 2005 WL 3157740 (Va.Ct.App. Nov.29, 2005). However, our Supreme Court reversed, holding that the offense of carrying a concealed weapon is completed at the time of concealment, and, thus, the subsequent use of the knife was irrelevant in determining if it was a weapon. Farrakhan v. Commonwealth, 273 Va. 177, 639 S.E.2d 227 (2007).[5]
We have also applied the statute to other types of potentially dangerous cutting instruments. For example, we concluded that a box cutter was a weapon of like kind to a razor, O’Banion v. Commonwealth, 33 Va.App. 47, 531 S.E.2d 599 *404 (2000) (en banc), and that a razor blade is a razor under Code § 18.2-308(A), Sykes v. Commonwealth, 37 Va.App. 262, 556 S.E.2d 794 (2001). Our Supreme Court affirmed our decision in O’Banion in an unpublished order. O’Banion v. Commonwealth, No. 002014 (Va. May 7, 2001). However, six years later, it overruled O’Banion and held that a box cutter was not a weapon of like kind. Harris v. Commonwealth, 274 Va. 409, 650 S.E.2d 89 (2007). The Court reasoned that “[mjerely because a box cutter contains a sharp-edged, razor-type blade that is retractable does not mean that a box cutter meets the definition of the item ‘razor’ enumerated in Code § 18.2-380(A).” Id. at 415, 650 S.E.2d at 91. While recognizing that “a box cutter is a potentially dangerous instrumentality and had, in fact, been used as such in the past” our Supreme Court explained that “it is ... the role of the General Assembly, not this Court, to craft any needed revisions to Code § 18.2-308(A) and to decide what items to include within the statute’s proscription.” Id. at 415, 650 S.E.2d at 92.
Finally, this Court has held that a butterfly knife was a weapon of like kind, Kingrey v. Commonwealth, No. 2202-97-2, 1999 WL 1129723 (Va.Ct.App. July 13, 1999), and that a folding knife that locks open was a weapon of like kind as well, Ohin v. Commonwealth, 47 Va.App. 194, 622 S.E.2d 784 (2005). However, the Supreme Court later concluded that a butterfly knife is not a weapon of like kind. Thompson v. Commonwealth, 277 Va. 280, 673 S.E.2d 469 (2009).
A review of these cases demonstrates the perplexity that exists among law enforcement officers, prosecutors, trial judges, and appellate judges over the scope of this statute. In an attempt to define its terms, we have resorted to embracing the “I know it when I see it” logic of Justice Stewart, see Jacobellis v. Ohio, 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793 (1964) (Stewart, J. concurring),[6] by including a *405 picture of the offending knife in our opinion. See infra at 408, 686 S.E.2d at 533, 413, 686 S.E.2d at 535; see also Gilliam v. Commonwealth, 49 Va.App. 508, 515, 642 S.E.2d 774, 778 (2007). Moreover, on occasion, we even find the same jurist coming to a different conclusion when considering a similarly described knife. Compare Kingrey, No. 2202-97-2, 1999 WL 1129723 (affirming a conviction under Code § 18.2-308(A) and concluding that an open butterfly knife closely resembles a dirk), with Thompson, 277 Va. at 280, 673 S.E.2d at 469 (reversing a conviction under Code § 18.2-308(A) and concluding that the “evidence was insufficient as a matter of law to establish beyond a reasonable doubt that the butterfly knife is ‘of like kind’ to a dirk or any other weapon enumerated in Code § 18.2-308(A)”).
I recognize the very legitimate and necessary purpose of Code § 18.2-308—“to interdict the practice of carrying a deadly weapon about the person, concealed and yet so accessible as to afford prompt and immediate use.” Schaaf v. Commonwealth, 220 Va. 429, 430, 258 S.E.2d 574, 574-75 (1979). I also recognize, however, that there are very legitimate and lawful reasons to carry a concealed sharp instrument that is capable of injuring another person. Clearly, the General Assembly did not intend to prohibit all such conduct simply because of that capability. Because the “[subsequent use or circumstances may not be considered in the definitional analysis of [a] ‘weapon,’ ” Farrakhan, 273 Va. at 182, 639 S.E.2d at 230, we must, therefore, continue to engage in an ad hoc comparison of the knife in question with weapons that are today primarily found in museums and knife collections.
In doing so, I am concerned that we are forgetting that a “statute or ordinance [must] be sufficiently precise and definite to give fair warning to an actor that contemplated conduct is criminal.” Tanner v. City of Virginia Beach, 277 Va. 432, 439, 674 S.E.2d 848, 852 (2009) (citing Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983); Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, *406 2298, 33 L.Ed.2d 222 (1972)). We require this level of precision because “[i]t is simply not fair to prosecute someone for a crime that has not been defined until the judicial decision that sends him to jail.” Sorich v. United States, No. 08-410, slip op. at 4 (U.S. Feb. 23, 2009) (Scalia, J., dissenting).[7]
Time has not been kind to Code § 18.2-308(A). Whatever clarity and certainty it had in 1849 has been obfuscated by a series of confusing and sometimes contradictory interpretations as we have attempted to conform nineteenth century language to twenty-first century reality. As a result, it now provides neither notice to the citizenry of what conduct it criminalizes, nor does it provide guidance to the members of law enforcement and the prosecutors who must enforce it or the judges who must apply it. Additionally, because a literal application of this statute excludes many dangerous bladed weapons and ignores the intent of the accused, it does not effectively “interdict the practice of carrying a [concealed] deadly weapon about the person.” Schaaf, 220 Va. at 430, 258 S.E.2d at 574-75. For these reasons, I believe that it is time for the General Assembly to craft a replacement and to “[salute] the [statute as currently written] for its notable service in past ages [and] now accord it a decent burial.” Harper v. B & W Bandag Center, 226 Va. 469, 474, 311 S.E.2d 104, 107 (1984) (Russell, J., concurring).[8]

. Apparently, our Supreme Court’s holding in Farrakhan has not completely answered the question of when is a knife not a weapon. In Green v. Commonwealth, No. 0771-09-2, 2009 WL 4908976 (Va.Ct.App. Dec.22, 2009), this day decided, a panel of this Court reversed the trial court's conclusion that, although the knife, which "most closely resembled] a kitchen steak knife,” was "not a knife designed for weaponry,” it came within the purview of the statute because the "appellant possessed it for self-defense.” Green, 2009 WL 4908976, at *3.

. Justice Stewart famously wrote in his concurring opinion in Jacobellis: "I shall not today attempt further to define the kinds of material I understand to be embraced within [the definition of ''hardcore pornography”]; and perhaps I could never succeed in intelligibly doing so. *405 But I know it when I see it, and the motion picture involved in this case is not that.” Jacobellis, 378 U.S. at 197, 84 S.Ct. at 1683.

. As the Attorney General conceded at oral argument, if this knife were considered a bowie knife or weapon of like kind, every hunter who carried a similar sheath knife in order to field dress his game would be guilty of a crime if the knife was concealed by, for instance, a jacket. I am confident that this would come as more than just a mild surprise to every sportsman in this Commonwealth.

. I am acutely aware that the most recent statistics show that forty-eight citizens of this Commonwealth were murdered by an assailant with a knife in 2007. See Va. Dep’t of Health, Off. of the Chief Med. Examiner's Ann. Rep. (2007). However, I am also aware that the weapon involved in these crimes is much more likely to be a kitchen knife, box cutter, or butterfly knife—weapons excluded from the coverage of Code § 18.2-308.2(A)—than a bowie knife, dirk or weapon of like kind. See, e.g., Alastair H. Leyland, Homicides Involving Knives and other Sharp Objects in Scotland, 1981-2003, J. of Pub. Health, Apr. 2006, at 146 ("[K]itchen knives may be used in at least half of all *407 stabbings.”). Thus, I do not question the wisdom of the policy behind Code § 18.2-308.2(A), I simply question whether the current archaic language is sufficient to advance that policy. Cf. Kansas v. Marsh, 548 U.S. 163, 186, 126 S.Ct. 2516, 2531, 165 L.Ed.2d 429 (2006).